IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOLD-A-RAMA INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 18-cv-08261 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| COLLECTOR-CONCIERGE-INTERNATIONAL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mold-A-Rama Inc. ("Mold-A-Rama") owns and operates about 60 MOLD-A-RAMA vending machines throughout the Midwest. MOLD-A-RAMA vending machines use technology from the 1950s and 1960s to create plastic souvenir figurines for customers who insert money into the machine.[1] Mold-A-Rama alleges that Defendant Collector-Concierge-International ("CCI") uses Mold-A-Rama's MOLD-A-RAMA trademark to offer for sale MOLD-A-RAMA vending machines that have been materially altered by replacing their original components with modern, non-MOLD-A-RAMA parts. Therefore, Mold-A-Rama has brought the present action under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and Illinois state law, claiming that CCI's use of the MOLD-A-RAMA trademark in connection with the marketing, promotion, and sale of the altered vending machines violates Mold-A-Rama's trademark rights and constitutes unfair competition. (Compl., Dkt. No. 1.) CCI now moves to dismiss the complaint under Federal Rule

---

[1] MOLD-A-RAMA, in a capital letters, refers to the trademark used by Mold-a-Rama, the company, in connection with its vending machine services.

of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (Dkt. No. 37.) For the reasons that follow, CCI's motion is granted.

## BACKGROUND

The following facts are drawn from the allegations of Mold-A-Rama's complaint and the affidavits submitted by the parties in connection with the instant motion. For purposes of the motion, any well-pleaded facts alleged in the complaint are taken as true and any factual disputes in the affidavits are resolved in Mold-A-Rama's favor as the plaintiff. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

Mold-A-Rama is an Illinois corporation with its principal place of business in Brookfield, Illinois. (Compl. ¶ 1.) The company is the biggest operator of MOLD-A-RAMA vending machines in the Midwest and owns the MOLD-A-RAMA trademark for use in connection with vending machines that create plastic figurines. (*Id.* ¶¶ 20, 23.) CCI is a sole proprietorship operated by Rick Sky, a Canadian citizen and resident. (Sky Aff. ¶¶ 1–3, Dkt No. 38-1.) It promotes, markets, and sells memorabilia on behalf of private collectors. (Compl. ¶ 31.) Among the collectibles offered for sale by CCI are vending machines bearing the MOLD-A-RAMA mark. (*Id.* ¶ 32.) CCI sells those machines on behalf of Bruce Weiner.[2] (*Id.* ¶ 31.) Unlike authentic MOLD-A-RAMA vending machines, however, Weiner's machines contain new, modernized parts in place of the original components. (*Id.* ¶ 30.) As a result, Mold-A-Rama claims that Weiner's machines cannot be considered MOLD-A-RAMA vending machines. (*Id.*)

To promote and sell Weiner's machines, CCI commissioned the production of a video called "The Story of the Mold A Rama Machine—Special Chicagoland Edition!" ("Video"). (*Id.*

---

[2] Weiner was originally named as a Defendant but was voluntarily dismissed with prejudice. (Dkt. No. 52.)

¶ 38.) The Video is publicly available on the internet.[3] (*Id.*) Both Sky and Weiner appear in the video to promote Weiner's machines. (*Id.* ¶ 41.) Also appearing in the Video is Mike Hasanov, an Illinois resident and owner of the Illinois corporation Vintage Coin-Op Restorations. (*Id.* ¶¶ 36–37, 41.) The Video gives phone numbers for both Sky and Hasanov for those who wish "to contact Collector-Concierge-International, for any collector's services [sic] needs including the purchase of a Mold-A-Rama." (*Id.* ¶ 45.)

On October 23, 2018, Hasanov uploaded pictures of Weiner's machines on the Facebook page for his Vintage Coin-Op Restorations business. (*Id.* ¶ 48.) The post states that the "original but fully restored" machines are for sale and invites potential customers to "Come and Visit us at the Chicagoland Coin Op Show! And see them for yourself and go home with a memory." (*Id.* ¶¶ 48–49.) Three of Weiner's machines were in fact displayed by CCI at the Chicagoland Coin Op Show held from November 16 through November 18, 2018 in Grayslake, Illinois. (*Id.* ¶¶ 50, 54.) Sky and Hasanov represented CCI at the Chicagoland Coin Op Show. (*Id.* ¶ 55.) The three machines displayed at the show bore the MOLD-A-RAMA trademark and were represented as part of a "Mold A Rama" Collection on a poster displayed next to the machines. (*Id.* ¶ 56.)

## DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) "tests whether a federal court has personal jurisdiction over a defendant." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). When its existence is challenged, the plaintiff bears the burden of establishing personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). And when a court rules on a Rule 12(b)(2) motion based on the parties' submission of written materials without holding an evidentiary hearing, "the plaintiff need only

---

[3] The Video can be viewed at https://vimeo.com/300151695 (last visited 3/24/2020).

3

make out a *prima facie* case of personal jurisdiction." *Id.* (internal quotation marks omitted). As noted above, any well-pleaded facts alleged in the complaint are taken as true and any factual disputes in the affidavits are resolved in the plaintiff's favor. *Tamburo*, 601 F.3d at 700. Still, where the defendant "submits affidavits or other evidence in opposition, 'the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'" *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003)). If the plaintiff fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true. *Id.*

### I. Timeliness and Waiver

As an initial matter, Mold-A-Rama contends both that CCI's Rule 12(b)(2) motion is untimely and that CCI has waived its personal-jurisdiction defense. The Court turns first to the timeliness issue.

Under Rule 12(b), every defense to a claim for relief in any pleading must be raised in the responsive pleading if one is required. And under Rule 12(a), a litigant has 21 days after service of the summons and complaint to file its answer. However, certain defenses, including lack of personal jurisdiction, may be asserted by motion, provided that such a motion is filed before the responsive pleading if a responsive pleading is allowed. Fed. R. Civ. P. 12(b). The Seventh Circuit has explained that these provisions "do not on their face impose a 21-day rule on a motion presenting a defense of personal jurisdiction." *Hedeen Int'l, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 906 (7th Cir. 2016). Rather, "[t]hey provide that a responsive pleading such as an answer must be filed within 21 days, but the defense can be asserted either in that responsive pleading or in a

motion."[4] *Id.* at 905–06. Thus, although Rule 12(b) forecloses the filing of such a motion after a responsive pleading is filed, it does not impose a 21-day restriction on the motion. *Id.* at 906.

Here, there is no dispute that CCI filed its answer asserting the defense of lack of personal jurisdiction prior to filing the present motion to dismiss. Moreover, CCI's answer does not merely set forth a boilerplate objection to personal jurisdiction but instead pleads detailed allegations in support of its personal-jurisdiction defense. (*See* CCI's Answer ¶¶ A–F, Dkt. No. 28.) Mold-A-Rama does not challenge the timeliness of that answer.[5] The timeliness issue instead revolves around the fact that CCI asserted its personal-jurisdiction defense first in the answer and then filed its motion to dismiss. Yet Rule 12(b) states that a motion asserting any of the Rule 12(b) defenses "***must*** be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b) (emphasis added). The Rule's plain language is seemingly unequivocal that a Rule 12(b)(2) motion cannot be brought after a defendant has filed its responsive pleading. Similarly, the Seventh Circuit has observed that "Rule 12(b) provides that the motion [to dismiss for lack of personal jurisdiction] cannot occur after . . . a responsive pleading is filed." *Hedeen*, 811 F.3d at 906.[6] At the same time, Rule 12(h)(1) is equally clear that a defendant does not waive, and

---

[4] Where the defendant elects to raise its personal-jurisdiction defense in a Rule 12(b)(2) motion, its time to file a responsive pleading is extended to no later than 14 days after the denial of that motion. Fed. R. Civ. P. 12(a)(4).

[5] Mold-A-Rama may have had grounds to challenge the timeliness of CCI's answer, as it was filed on April 22, 2019 (*see* Dkt. No. 28), which was more than 21 days after March 21, 2019, the date on which Mold-A-Rama served CCI by alternate means, *i.e.*, email (Dkt. No. 26). Nonetheless, because Mold-A-Rama did not challenge the timeliness of the answer on this ground, the argument has been waived. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate." (citations omitted)).

[6] In *Hedeen*, however, the Seventh Circuit did not have to address whether a Rule 12(b)(2) motion filed after an answer would be untimely because the motion there had been filed before any responsive pleading. *Hedeen*, 811 F.3d at 906.

therefore necessarily preserves, its personal-jurisdiction defense by either raising it in a Rule 12(b)(2) motion *or* including it in a timely-filed responsive pleading. Thus, under a plain reading of Rule 12, CCI properly preserved its personal-jurisdiction defense by asserting it in a timely-filed answer. The question, then, is whether a subsequently filed Rule 12(b)(2) motion is the proper mechanism for raising the defense after an answer. The case law reveals no clear-cut answer.

One way of addressing the issue might be to construe a Rule 12(b)(2) motion filed after a responsive pleading asserting a personal-jurisdiction defense as a motion for summary judgment. However, some courts have held that "summary judgment is an inappropriate vehicle for raising a question concerning the court's personal jurisdiction." *E.g.*, *Li Gear, Inc. v. Kerr Mach. Co.*, No. 16 C 4657, 2017 WL 432931, at *2 (N.D. Ill. Feb. 1, 2017) (internal quotation marks omitted). That is because "a court that lacks personal or subject-matter jurisdiction does not have power to enter *any* kind of judgment—summary or otherwise." *Id.* (internal quotation marks omitted). Moreover, if the Court were to construe a personal-jurisdiction motion as one for summary judgment, then the defendant would have to meet Federal Rule of Civil Procedure 56's no-genuine-dispute-of-material-fact standard, whereas the Court may resolve conflicts in written submissions when evaluating personal jurisdiction under Rule 12(b)(2). *See Forrest Fin. Corp. v. Chopra Int'l, Inc.*, No. 97 C 5957, 1998 WL 703852, at *3–4 (N.D. Ill. Sept. 24, 1998).

A better route might be to treat CCI's Rule 12(b)(2) motion as one for judgment on the pleadings under Rule 12(c). Indeed, the Seventh Circuit has held (albeit well before its decision in *Hedeen*) that a "defendant may use a rule 12(c) motion after the close of the pleadings to raise various Rule 12(b) defenses regarding procedural defects, in which case courts apply the same standard applicable to the corresponding 12(b) motion." *Alexander v. City of Chicago*, 994 F.2d

6

333, 336 (7th Cir. 1993). But at least one district court has emphasized that, in making this point, the Seventh Circuit cited a treatise that explained that "Rule 12(c) enables parties to assert only *certain* procedural defenses after the close of the pleadings, as authorized by Rule 12(h)(2) and (3)." *Mussat v. Enclarity, Inc.*, 362 F. Supp. 3d 468, 472 (N.D. Ill. 2019); *see also Walker v. Carnival Cruise Lines, Inc.*, No. 87 C 115, 1987 WL 19554, at *1 n.1 (N.D. Ill. Nov. 5, 1987) ("A Rule 12(c) motion is an inappropriate vehicle for preliminary matters such as jurisdiction or venue, being ordinarily used for judgments on the merits of a complaint."). And even if Rule 12(c) were an appropriate vehicle for a defendant to raise its personal-jurisdiction defense, the Seventh Circuit's statement that a court can apply the same standard as under Rule 12(b)(2) is contradicted by the plain language of Rule 12(d). Specifically, that rule provides that if, "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). That means where, as here, the parties introduce written submissions to support their positions on personal jurisdiction, the Court could not consider those submissions without applying Rule 56's no-genuine-dispute-of-material-fact standard.

In short, while Rule 12 makes clear that a defendant may preserve its personal-jurisdiction defense by asserting it in its responsive pleading, it seemingly provides no vehicle under which the defense can be litigated—at least not one subject to the Rule 12(b)(2) standard of review. Perhaps that is simply a consequence of raising the defense in the first instance in a responsive pleading instead of a Rule 12(b)(2) motion filed before such a pleading. Yet, if that is an intended consequence, the Court would expect Rule 12 to speak more clearly as to such a result. Instead, the rule treats a responsive pleading and Rule 12(b)(2) motion as equally valid methods of asserting a personal-jurisdiction defense.

7

Some courts in this District that have confronted this issue have noted (without further explanation) that a court can "forgive untimely Rule 12 motions," while going on to conclude on other grounds that the defendant's Rule 12(b) defense could not be sustained. *See Mussat*, 362 F. Supp. 3d at 473; *Liberman v. Budz*, No. 00 C 05662, 2013 WL 157200, at *9–10 (N.D. Ill. Jan. 15, 2013). At least court in this District found little issue with a post-responsive pleading motion that the defendant stated was brought under both Rule 12(b)(2) and 12(c), simply noting that the "Rule 12(b)(2) and 12(c) analyses merge into one here." *Nucap Indus., Inc. v. Robert Bosch, LLC*, No. 15 C 2207, 2017 WL 3581174, at *5 (N.D. Ill. Aug. 18, 2017) (citing *Alexander*, 994 F.2d at 336). Another court confronted with a motion for summary judgment on a personal-jurisdiction defense simply treated the motion as arising under Rule 12(b)(2) notwithstanding the fact that the motion was filed after the responsive pleading. *See Li Gear*, 2017 WL 432931, at *2–3. Finally, in *Dell Marketing, LP v. Incompass IT, Inc.*, 771 F Supp. 2d 648 (W.D. Tex. 2011), a district court outside of this Circuit acknowledged that the language of Rule 12(b) supports the position that a Rule 12(b)(2) motion is untimely when a defendant files it after its responsive pleading asserting a personal-jurisdiction defense, but nonetheless concluded that the plain language interpretation led to a "bizarre and probably unintended result [where] certain defenses included only in a responsive pleading would not be waived, but could not be asserted by motion." *Id.* at 652–53. Instead, the *Dell Marketing* court adopted what it called a "more plausible interpretation of Rule 12(b) under which "[a]ll defenses must be included in a responsive pleading, *except* the defenses in Rule 12(b)(1)–(7), which may *instead* be made by motion alone." *Id.* at 653.

Ultimately, this Court agrees with the *Dell Marketing* approach and concludes that where a defendant has asserted a personal-jurisdiction defense in its answer and subsequently seeks dismissal on that basis, the Court must be able to decide such a motion under the Rule 12(b)(2)

8

standard of review. That may mean that the Court is forgiving an untimely motion or it may mean that it is treating the motion as a Rule 12(c) motion subject to Rule 12(b)(2)'s standard (as seemingly permitted by the Seventh Circuit in *Alexander*, 994 F.2d at 336). Regardless, while Rule 12(b)'s language and Seventh Circuit precedent do not provide a clear answer as to the proper procedural vehicle for considering CCI's motion, the Court is convinced that the motion is timely and can be treated as if it were a pre-responsive pleading Rule 12(b)(2) motion.

Of course, even when a Rule 12(b)(2) motion is timely filed, a defendant may nonetheless waive its personal-jurisdiction defense. *Hedeen*, 811 F.3d at 906. "[A] personal[-]jurisdiction defense may be waived if a defendant gives a plaintiff a reasonable expectation that he will defend the suit on the merits or where he causes the court to go to some effort that would be wasted if personal jurisdiction is subsequently found lacking." *Id.* Here, Mold-A-Rama contends that CCI adopted a "wait-and-see" approach before filing its motion to dismiss. According to Mold-A-Rama, such an approach is evidenced by the fact that CCI waited three months after filing its answer to bring the motion to dismiss for lack of personal jurisdiction.

The Court acknowledges that that the circumstances here present a close call for waiver. Weighing in favor of waiver is the fact that the parties submitted a joint initial status report that made no mention of CCI's intention of filing a motion to dismiss for lack of personal jurisdiction. (Dkt. No. 31.) Based on that report, the Court proceeded to set a discovery schedule. (Dkt. No. 33.) Also, prior to CCI's motion, Mold-A-Rama expended effort and incurred some costs in making its Mandatory Initial Discovery disclosures. On the other hand, only three months elapsed between CCI answering the complaint and its filing of the motion to dismiss. *See Maxwell v. Vertical Networks, Inc.*, No. 03 C 5715, 2005 WL 950634, at \*12 (N.D. Ill. Mar. 18, 2005) ("[T]he more time the parties spend in litigation, the greater the likelihood that personal

9

jurisdiction may have been waived."). And CCI's answer made it clear that CCI intended to contest this Court's personal jurisdiction, providing a detailed explanation and factual allegations in support of its defense. *See Greene v. Karpeles*, No. 14 C 1437, 2019 WL 1125796, at *4 (N.D. Ill. Mar. 12, 2019) (finding that the defendant did not waive his personal-jurisdiction defense where he took the "consistent position that the court lacks personal jurisdiction over him"). Moreover, during that time, CCI was actively engaged in settlement discussions with Mold-A-Rama in an attempt to avoid litigating the matter. *See Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004) (finding that a nine-month delay in filing a motion to dismiss for improper venue did not support waiver when parties were engaged in settlement discussions during that time, and noting that "considerations of economy argue against the filing of *any* motions while parties are trying to reach settlement, since if they do settle the case any motions filed in it will be moot").

While settlement discussions were ongoing, the parties exchanged their Mandatory Initial Discovery disclosures. According to Mold-A-Rama, CCI submitted to this Court's jurisdiction by allowing the parties to proceed with their Mandatory Initial Discovery disclosures. However, the Seventh Circuit has found that a defendant's participation in limited discovery during settlement discussions does not, by itself, suffice to waive a Rule 12(b) defense. *Am. Patriot*, 364 F.3d at 888; *cf. Castle v. Global Credit & Collection Corp.*, No. 1:18-cv-06888, 2020 WL 127763, at *3, *5 (N.D. Ill. Jan. 10, 2020) (finding that the defendants did not waive their right to arbitration even when they participated in Mandatory Initial Discovery because they previously alerted the plaintiffs to the possibility of arbitration in their answer and the parties had not made much progress in fact discovery). And here, CCI's Mandatory Initial Discovery disclosures gave Mold-A-Rama no reasonable expectation that CCI was submitting to this Court's jurisdiction. Quite the

opposite, as CCI's disclosures again reiterated that it planned to contest the personal-jurisdiction issue. (Pl.'s Mem. in Supp. of Mot. to Compel, Ex. A at 3, Dkt. No. 46-2; Pl.'s Mem. in Supp. of Mot. to Compel, Ex. G at 4, Dkt. No. 46-8.) Moreover, CCI's Mandatory Initial Discovery disclosures were incomplete, limited to just a few pages of written responses with no production of documents or electronically stored information. (*See* Pl.'s Mem. in Supp. of Mot. to Compel, Dkt. No. 46.)[7] And shortly after making its limited Mandatory Initial Discovery disclosures, CCI filed the present Rule 12(b)(2) motion. Even after CCI filed its motion to dismiss, the parties agreed to resume settlement discussions by attending a settlement conference before the Magistrate Judge. Briefing and discovery were put on hold during the ultimately unsuccessful settlement talks.

Given these circumstances, the Court declines to conclude that CCI's conduct gave Mold-A-Rama a reasonable expectation that it would litigate the action on the merits. Rather, the Court finds that CCI was actively trying to settle the case and avoid litigation. Nor did it engage in conduct that would have wasted this Court's resources in the event that personal jurisdiction were found lacking, as the Court has made no substantive rulings prior to this one. *See Am. Patriot*, 364 F.3d at 888 (finding that the defendants were not "testing the wind, for the district court made no rulings until it dismissed the suit; and by the same token the delay in pleading improper venue caused no wasted motion by the court").Thus, CCI has not waived its personal-jurisdiction defense.

---

[7] Because of CCI's incomplete disclosures, Mold-A-Rama filed a motion to compel CCI's complete Mandatory Initial Discovery responses shortly after CCI filed the present motion to dismiss. (Dkt. No. 45.)

## II. Merits

Having found that CCI's Rule 12(b)(2) motion was not untimely and its personal jurisdiction defense has not been waived, the Court turns to the merits of the defense. Because the Lanham Act does not authorize nationwide service of process, the Court must look to Illinois's long-arm statute to determine whether CCI is subject to personal jurisdiction in Illinois. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The long-arm statute allows for the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. 735 ILCS 5/2-209(c); *Tamburo*, 601 F.3d at 700. Thus, the question before the Court is whether CCI has "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction can be general or specific. However, Mold-A-Rama does not contend that this Court has general jurisdiction over CCI, so the present inquiry will be limited to whether Mold-A-Rama has shown that this Court may exercise specific jurisdiction over CCI. That inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Specifically, "the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Tamburo*, 601 F.3d at 702. Thus, there is specific jurisdiction where "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* In addition, the exercise of jurisdiction "must also comport with traditional notions of fair play and substantial justice." *Id.*

According to Mold-A-Rama, CCI is subject to personal jurisdiction in Illinois based on its presence at the Chicagoland Coin Op Show and its conduct in the leadup to the show—specifically, the production and publication of the Video. The Chicagoland Coin Op Show is an event that is open to the public where "a variety of collectible dealers set up booths and sell collectibles." (Decl. of Paul Jones in Supp. of Pl.'s Opp'n to Mot. to Dismiss ("Jones Decl.") ¶ 7, Dkt. No. 60-1.) In November 2018, CCI had a booth at the Chicagoland Coin Op Show where it displayed and offered for sale various collectibles, including Weiner's refurbished machines bearing the MOLD-A-RAMA mark. (Jones Decl. ¶¶ 8, 11–13; Jones Decl. Exs. A–D, Dkt. Nos. 60-2–60-5; Compl. ¶ 56.) CCI does not deny that it attended and displayed Weiner's machines at the Chicagoland Coin Op Show. Nonetheless, it contends that the Chicagoland Coin Op Show attracts collectors from all over the world (Sky Aff. ¶ 6), and CCI's attendance at an international trade show in Illinois is not sufficient to subject it to personal jurisdiction there.

Normally, attending a single trade show in the forum is not, by itself, sufficient to establish personal jurisdiction. *See, e.g.*, *Black & Decker, Inc. v. Shanghai Xing Te Hao Indus. Co., Ltd.*, No. 02 C 4615, 2003 WL 21383325, at *2 (N.D. Ill. June 12, 2003) ("[T]his Court will not exercise personal jurisdiction over a foreign defendant based on mere attendance at a trade show in the forum."); *Berthold Types Ltd. v. European Mikrograf Corp.*, 102 F. Supp. 2d 928, 934 (N.D. Ill. 2000); *Ameritech Servs., Inc. v. SCA Promotions, Inc.*, No. 99 C 4160, 2000 WL 283098, at *4 (N.D. Ill. Mar. 6, 2000). That is particularly true when the trade show does not specifically target forum-state residents but rather an international audience. *See, e.g.*, *Modern Trade Commc'ns, Inc. v. PSMJ Res., Inc.*, No. 10 C 5380, 2011 WL 3678724, at *5 (N.D. Ill. Aug. 19, 2011) (finding a lack of personal jurisdiction in Illinois where the plaintiff did not allege that the defendant specifically targeted Illinois residents at the trade show and "concede[d] that

13

the show was aimed at an international audience"). Other than its location in Illinois, Mold-A-Rama makes no allegations and presents no evidence suggesting that the Chicagoland Coin Op Show specifically targets Illinois residents. Indeed, Mold-A-Rama's own exhibits support CCI's contention that the Chicagoland Coin Op Show is an international trade show. (*See* Decl. of Michael H. Fleck in Supp. of Pl.'s Opp'n to Mot. to Dismiss, Ex. 1, Dkt. No. 60-7 ("[The Chicagoland Coin Op Show] is very popular with dealers and collectors ***from across the country and around the world*** for its wide range of high-quality antique collectibles." (emphasis added)).) CCI also states that its primary target for sales of Weiner's machines was its international clientele located in Europe, the United Arab Emirates, Canada, and Asia, and displaying Weiner's machines at international trade shows, such as the Chicagoland Coin Op Show, was a cost-efficient way of reaching them. (Sky Aff. ¶¶ 6, 13.)

Moreover, Mold-A-Rama does not claim that CCI sold any of Weiner's machines at the Chicagoland Coin Op Show, much less sold one to an Illinois resident. *See, e.g.*, *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 855–56 (N.D. Ill. 2009) (holding that the district court had no personal jurisdiction where the plaintiff could not allege that the trade show was specifically directed at Illinois residents or there were allegations of any sales to Illinois residents either during or as a result of the trade show); *Berthold*, 102 F. Supp. 2d at 934 (stating that the defendants' attendance at a trade show and an educational seminar in Chicago were insufficient to establish specific jurisdiction where the plaintiff failed to allege that the defendants did not sell any infringing products in Chicago). And even if the trade show specifically targeted Illinois residents, an attempt to sell Weiner's machines at the trade show without an actual sale would still be insufficient to subject CCI to personal jurisdiction in Illinois. *See C.S.B. Commodities*, 626 F. Supp. 2d at 854 (rejecting proposition that "display and

solicitation, without sales, at a trade show provides a sufficient basis for concluding that a cause of action 'arises from' that kind of contact").

Nonetheless, Mold-A-Rama contends that the Video, released shortly in advance of CCI's attendance at the Chicagoland Coin Op Show, demonstrates that CCI was deliberately targeting Illinois residents. Specifically, Mold-A-Rama points to the Video's subtitle "Special Chicagoland Edition!" The Court has viewed the Video in its entirety and nothing in it suggests that it was made in an effort to target Chicago or Illinois residents. Instead the Video focuses on the technology and history of MOLD-A-RAMA vending machines, as well as what makes them such a prized collectible. The only substantive discussion of Chicago in the Video occurs when Hasanov recalls his childhood memories of using the MOLD-A-RAMA vending machines at Chicago's Lincoln Park Zoo and how that nostalgia got him involved in marketing MOLD-A-RAMA vending machines. That brief reference to Chicago hardly establishes the Video's intent to target Illinois residents. Instead, it supports CCI's contention that "[t]he Chicagoland area is inextricably tied to the history and value of Mold-A-Rama machines." (Sky Aff. ¶ 9.) The Video spends just as much time discussing MOLD-A-RAMA machines located in New York, Detroit, and Montreal; Chicago gets no special attention. Indeed, the subtitle "Special Chicagoland Edition!" is not even used in the Video itself. Instead, it only appears on the website where it currently streams. It appears clear to the Court that the reason the subtitle was included was not to target Chicago or Illinois collectors but, as CCI explains, to "provide[] a sales and marketing tie-in to the [Chicagoland Coin Op Show]." (Sky Aff. ¶ 10.) And given that the trade show did not specifically target Illinois residents, that link cannot show that the Video did so.

Finally, Mold-A-Rama contends that CCI's use of Hasanov, an Illinois resident, as its agent in selling Weiner's machines establishes personal jurisdiction in the State. It is true that the

15

Video holds Hasanov out as a way of reaching out to CCI "for any collector's services [sic] needs including the purchase of a Mold-A-Rama." (Compl. ¶ 45.) And while CCI and Hasanov deny that Hasanov had a sales-agency relationship with CCI, given the Video's representation to the contrary, at the very least there is a factual dispute that the Court must resolve in Mold-A-Rama's favor at this stage. Nonetheless, the facts establish that, at most, Hasanov was an independent sales agent. An independent sales agent is an "independent, non-exclusive agent[], who [is] not subject to the supervision and control of the out-of-state company." *Apollo Galileo USA P'ship v. Am. Leisure Holdings, Inc.*, No. 07 C 4403, 2009 WL 377381, at *6 (N.D. Ill. Feb. 11, 2009). Here, the unrefuted portions of Sky's and Hasanov's affidavits establish that Hasanov runs his own business, engaged in promotional activities for various collectors, and was not under the control or direction of CCI. (*See* Sky Aff. ¶ 17; Hasanov Aff. ¶¶ 3–6, Dkt. No. 61-2.) Thus, as an independent sales agent, Hasanov cannot subject CCI to personal jurisdiction in Illinois. *Apollo Galileo*, 2009 WL 377381, at *6 ("The fact that travel agents in Illinois entered into transactions and those transactions benefitted [the defendant] is irrelevant unless those travel agents were subject to the supervision and control of [the defendant].")

In any case, Mold-A-Rama cannot establish that Hasanov was retained for the purpose of targeting Illinois residents or actually made any sales on CCI's behalf. Nor does Mold-A-Rama allege or have any evidence that CCI made any sales to Illinois residents, even without Hasanov's assistance. The best Mold-A-Rama can do is state that CCI sold two of Weiner's machines to United States residents. But the fact that CCI sold Weiner's machines to a resident in some state in the United States falls far short of establishing that CCI is subject to personal jurisdiction in Illinois.

In short, Mold-A-Rama has failed to establish a *prima facie* case for specific personal jurisdiction in Illinois. CCI is a Canadian sole proprietorship that did not take any action to purposefully direct any business activities toward Illinois or otherwise avail itself of the privilege of conducting business in the State. Any contact CCI did have with Illinois was simply too attenuated and insubstantial to support personal jurisdiction.

## CONCLUSION

For the foregoing reasons, CCI's motion to dismiss for lack of personal jurisdiction (Dkt. No. 37) is granted.

ENTERED:

Dated: March 31, 2020

_____
Andrea R. Wood
United States District Judge